UNITED STATES  DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-------------------------------------------x
UNITED STATES OF AMERICA

vs.                              5:25-MJ-236

ROBERT W. JOHNSON,

                          Defendant.
-------------------------------------------x

        Transcript of a Proceeding on August 19, 2025,

at the James Hanley Federal Building, 100 South

Clinton Street, Syracuse, New York, the HONORABLE

MARK W. PEDERSEN, United States Magistrate Judge for

the Western District of New York, Presiding.


                   A P P E A R A N C E S

For The Government:  UNITED STATES ATTORNEY'S OFFICE
                     P.O. Box 7198
                     100 South Clinton Street
                     Syracuse, New York  13261-7198
                      BY:  GEOFFREY J.L. BROWN, ESQ.


For Defendant:       FEDERAL PUBLIC DEFENDER'S OFFICE
                     NORTHERN DISTRICT OF NEW YORK
                     4 Clinton Square
                     Syracuse, New York  13202
                      BY:  LISA PEEBLES, ESQ.


            *Jodi L. Hibbard, RMR, CSR, CRR*
          *Official United States Court Reporter*
               *100 South Clinton Street*
             *Syracuse, New York  13261-7367*
                     *(315) 234-8547*

1          (Open Court, 9:38 a.m.)

2          COURTROOM DEPUTY:  The court calls case United

3    States of America versus Robert W. Johnson, Case Number

4    5:25-MJ-236 for detention hearing.  Counselors, your

5    appearances for the record, please.

6          MR. BROWN:  Geoff Brown on behalf of the United

7    States, good morning, your Honor.

8          THE COURT:  Good morning.

9          MS. PEEBLES:  Lisa Peebles appearing on behalf of

10   Robert Johnson, Mr. Johnson is also present.  Good morning,

11   your Honor.

12         THE COURT:  Good morning.  Mr. Johnson, you're

13   fortunate to be being prosecuted here in the Northern

14   District, the courtroom's much nicer than any of the ones in

15   Rochester or Buffalo in the Western District.

16         So we are here this morning on a detention hearing,

17   but before we do that, I believe that there is a motion that

18   the government wishes to make concerning an issue that

19   occurred on August 18th as well as other information,

20   Mr. Brown.

21         MR. BROWN:  Yes, your Honor.  The United States

22   would like to move pursuant to 18 U.S.C. 4241 that the

23   defendant have a competency evaluation.  The government

24   believes there is reasonable cause to believe the defendant

25   may be presently suffering from mental disease or defect

1    rendering him mentally incompetent to the extent that he is

2    unable to understand the nature and consequences of the

3    proceeding against him or assist properly in his defense.

4        It's my understanding at the previous hearing the

5    defendant was claiming that he had been sexually assaulted in

6    jail and that the government was part of a conspiracy to have

7    him sexually assaulted in jail.  I reached out to the

8    Marshals the instant I heard about that and had a report sent

9    to us of a full investigation into his claims which show them

10   to be completely unfounded, which has been provided to his

11   attorney as well as the court.

12       It's also my understanding that since he's been

13   incarcerated, he's refusing to cooperate with medical or

14   mental health intake protocols at that facility so at this

15   point, we would like to have him evaluated for competency.

16   Thank you, your Honor.

17       THE COURT:  Do you have any idea if the medical or

18   mental health intake process would evaluate his competency at

19   all?

20       MR. BROWN:  Not fully enough to the extent the

21   court would need to make a determination.

22       THE COURT:  Okay, thank you.  Ms. Peebles, this is

23   really a detention hearing but it seems to me that we should

24   get the competency issue settled before we go to a detention

25   hearing.

1          MS. PEEBLES:  Yes, Judge.

2          THE COURT:  What's the defendant's position?

3          MS. PEEBLES:  My client would object to undergoing

4    mental health examination for determining whether or not he's

5    competent.  He understands the charges against him and

6    believes he can help in his own defense.  He's indicated that

7    he would like me as his standby counsel but would like me to

8    represent him for purposes of the detention hearing today.

9    And with that, Judge, he's been able to explain that he --

10   that I've explained what he's charged with, he seems to

11   understand what he's charged with and thinks he can help in

12   his own defense.

13          I will note he has made claims on the record about

14   having been sexually assaulted.  We do have the report that

15   was given to us by the government, that suggests those claims

16   are unfounded, but again, my client has maintained that

17   that -- those things happened to him, and he was continuing

18   to request the camera footage, your Honor, that he believes

19   would support his allegations regarding having been sexually

20   assaulted.

21          THE COURT:  So he's aware of this report from the

22   Onondaga County Sheriff's Office custody department, dated

23   8/18/25, that indicates an individual did review the booking

24   footage on August 13th between 1757 hours when Johnson

25   arrived at the facility and 1956 hours when LMSW Joseph

1    reported the allegation and did not notice anything in the

2    video footage that would support Mr. Johnson' claim?

3                MS. PEEBLES:  Yes, I did share this report with him

4    and he's indicated that he objects to the contents of this

5    report.

6                THE COURT:  On what ground?

7                MS. PEEBLES:  He would like the court to review the

8    video footage.

9                THE COURT:  I see.

10                MS. PEEBLES:  And audio.  And your Honor, he's also

11    indicating that, and would like me to put on the record that

12    it was a warrantless arrest for which he was brought in to

13    answer to these charges.

14                THE COURT:  Mr. Brown, is that the case?  I thought

15    there was a warrant.

16                MR. BROWN:  That's my understanding, that a warrant

17    was in fact signed in this case.

18                THE COURT:  But it may have been signed after he

19    was physically in custody?

20                MR. BROWN:  After a probable cause arrest, perhaps,

21    yes, your Honor.  As the court was determining whether or not

22    the local court was conflicted out.

23                THE COURT:  Mr. Brown, I was the one who reviewed

24    the criminal complaint and supporting affidavit and found

25    probable cause to believe the charges, at least

1    preliminarily, and I'm the one who signed the warrant for

2    your arrest.  Now you want me to review this video footage to

3    confirm that you were sexually assaulted, correct?

4         MS. PEEBLES:  Yes, and harassed, he says, your

5    Honor.

6         THE COURT:  Okay.  If I were to do that and find

7    that you were not sexually assaulted or harassed, what then?

8         MS. PEEBLES:  Your Honor, he is convinced that it

9    will confirm the allegations that he's suggesting with regard

10   to having been sexually assaulted and harassed.

11        THE COURT:  Mr. Brown, did you want to make any

12   further record on the 4241 motion as the basis for reasonable

13   cause to believe that the defendant may presently be

14   suffering from mental disease or defect rendering him

15   mentally incompetent to the extent he is unable to understand

16   the nature and consequences of the proceeding against him, or

17   assist properly in his defense?

18        MR. BROWN:  Yes, your Honor.  I would note that the

19   defendant is clearly not understanding that the court had

20   issued an arrest warrant with respect to this case, the

21   defendant is refusing to believe that a review of videotape

22   confirms the fact that he, you know, did not suffer these

23   assaults or these, you know, verbal altercations.  The

24   defendant clearly appears to be either delusional, paranoid,

25   or both, given the report that we have from the jail.  His

1    utter unwillingness to cooperate in any way with mental

2    health intake and medical protocols at the existing facility

3    make it even more difficult to see any path forward in that

4    manner and it appears that when he comes up against any kind

5    of obstacle in his thinking that he resorts to lashing out

6    either through malicious filings or physically.

7            MS. PEEBLES:  Your Honor, my client objects to the

8    government's summary of why he should be evaluated for

9    competency.  He does understand what he's charged with, he

10   does believe that he can help in his defense, and he in fact

11   wants to represent himself.  He does get off on tangents

12   regarding matters that perhaps may be considered irrelevant,

13   but I don't know that that makes him incompetent to

14   understand what he's actually charged with in this case.

15           THE COURT:  Let me hear from him directly then.

16   You may be seated, both of you.  Thank you for standing but

17   as long as you're in front of a microphone, that should be

18   sufficient to give the court reporter enough input for the

19   record.

20           So Mr. Johnson, you've heard what's been going on

21   here, it's nothing different from what they told me when we

22   were sitting back in the chambers conference room.  I'm

23   concerned myself actually, I have been concerned since

24   Thursday this issue might come up.  And so I'm interested to

25   know what you believe about the charges here.  I don't want

1    you to tell me anything that you and your attorney have

2    talked about or any advice that she's given to you, that's

3    protected by the attorney-client privilege.  I'd like to ask

4    you some direct questions and I'm going to have your counsel

5    put the kibosh on you if you start straying from the answers

6    that you need to give or answers that would violate the

7    attorney-client privilege or violate your right under the

8    Fifth Amendment to avoid self-incrimination.

9          First of all, you're charged with destruction,

10   alteration, or falsification of records in federal

11   investigations and bankruptcy.  The statute under which

12   that's charged is 18 U.S. Code Section 1519, and it states

13   that if you are convicted of that, you shall be fined under

14   this title and imprisoned not more than 20 years or both, of

15   course that's subject to the advisory Sentencing Guidelines.

16   You understand how serious that charge is?

17             THE DEFENDANT:  Yes, sir.

18             THE COURT:  You're also charged with bankruptcy

19   fraud under Section 157, that carries a maximum sentence of

20   five years, and Section 152 of Title 18, concealment of

21   assets, false oaths and claims, and bribery, that carries

22   punishments as well.  In fact, while we're talking about

23   that, Mr. Brown, do you want to place on the record what the

24   maximum punishments would be were he convicted of these three

25   offenses?

1          MR. BROWN:  Certainly, your Honor.  With respect to

2     18 U.S.C. Section 152 and 157, the maximum term of

3     imprisonment is five years, with the maximum fine of

4     $250,000, supervised release of three years, and a special

5     assessment of $100.  With respect to 1519, the maximum term

6     of imprisonment is 20 years, fine of $250,000, supervised

7     release of three years, and special assessment of $100.

8          THE COURT:  Thank you.

9          THE DEFENDANT:  And I object for the record.

10          THE COURT:  Pardon me?

11          THE DEFENDANT:  I object for the record.

12          THE COURT:  What are you objecting to?

13          THE DEFENDANT:  The charges.

14          THE COURT:  Okay.  You understand that at this

15     point we're not on trial?

16          THE DEFENDANT:  Yes, sir.

17          THE COURT:  Okay.  At this point we're only doing

18     some preliminary things first of all to determine whether you

19     should be sent for a mental competency examination, and if

20     not, then whether you should be released on conditions

21     pending the outcome of this case; you understand that?

22          THE DEFENDANT:  Yes, sir, I would like to speak

23     also.  I can have all that done through mental health

24     counseling, I'm currently active in Liberty Resources so I

25     can have the mental evaluation done alongside Liberty

1    Resources mental health counseling.

2           THE COURT:  Have you had any diagnosis that you'd

3    like to tell me about with regard to mental health?

4           THE DEFENDANT:  Yes, I was beat up by Buffalo

5    police officers January 5th, 2004, and in handcuffs, it's

6    camera footage from the C district police station for that

7    and they're withholding the records, to my belief.  I believe

8    via telephone they were contacted about the records and they

9    said due to my youthful offender status or A status, they

10   weren't available so I'm asking for those records to be

11   reserved.

12          THE COURT:  This is an allegation from 2004?

13          THE DEFENDANT:  Yes, I suffered PTSD and I was also

14   receiving mental health counseling from Greene Correctional

15   Facility.  My initial charges in city court were dismissed

16   May 3rd, 2004, and I was coerced to take a plea deal

17   April 2nd, 2004.  And also I was sentenced May 14th, 2004, I

18   was coerced to take lesser charges, and I have PTSD from

19   being coerced and abused by police officers.

20          THE COURT:  You're talking about the arrest in

21   January of 2004 when you were 19 years old and charged with

22   attempted murder and depraved indifference?

23          THE DEFENDANT:  Yes, and those charges were

24   dismissed May 3rd, 2004, and I was coerced to take lesser

25   charges.

1          THE COURT:  You pled guilty to two felony charges

2    in 2004?

3          THE DEFENDANT:  Yes, but initially, my city court

4    charges were dismissed May 3rd and I was coerced April 2nd,

5    2004 to take lesser charge.

6          THE COURT:  When you pled guilty in front of a

7    judge, didn't the judge ask you if anybody had forced you to

8    take the plea?

9          THE DEFENDANT:  Yeah, but I was already under -- I

10   didn't, I was a layman of the law and I was at the time

11   youthful offender.

12         THE COURT:  So you didn't understand what was

13   happening?

14         THE DEFENDANT:  Yes, I did, but I was coerced 'cuz

15   I didn't want to, you know, get more time than already

16   because I was abused.

17         THE COURT:  And is the same true to the other

18   charges you pled?

19         THE DEFENDANT:  Yes, sir.

20         THE COURT:  And you had your parole revoked for

21   violation, you had a charge of driving under suspension or in

22   violation of license restriction for driving while under the

23   influence of alcohol or drugs in Mansfield, Ohio.  That

24   warrant is still active inside the state of Ohio.

25         THE DEFENDANT:  It was May -- it was November 17th,

1    2021 matter and it states right here that March 1st, 2021, I

2    failed to appear.  It's a conflict of interest of the initial

3    charges of November 17th, 2021.

4             THE COURT:  What do you mean by conflict of

5    interest?

6             THE DEFENDANT:  March 1st, 2021, I wasn't in

7    Mansfield, Ohio.

8             THE COURT:  Right, that's exactly what this says,

9    is that you failed to appear when you were supposed to.

10            THE DEFENDANT:  March 1st, 2021.

11            THE COURT:  That's what it says.

12            THE DEFENDANT:  I was arrested November 17th, 2021

13   with no evidence.

14            THE COURT:  With no evidence?

15            THE DEFENDANT:  Right, and there's no way that I

16   could of been in Mansfield, Ohio in March of 2021 when I was

17   arrested in November 17th, 2021, that was the initial charge,

18   November 17, 2021.

19            THE COURT:  So in November when you were arrested,

20   I assume the police gave you an appearance ticket to say come

21   to court on this date?

22            THE DEFENDANT:  No, they, um, gave me a bail and

23   that was it.

24            THE COURT:  And they never told you about a new

25   court date?

1          THE DEFENDANT:  No.

2          THE COURT:  And the Ohio court never reached out to

3     you to say you have a court date?

4          THE DEFENDANT:  Nope, because it states right here,

5     March 1st, 2021, that I failed to appear so that's a conflict

6     of interest.

7          MS. PEEBLES:  I think what he means, Judge, is that

8     the March 21st, 2021 date precedes the arrest, so it doesn't

9     make sense that he would fail to appear in March when he

10    wasn't arrested until November.

11         THE COURT:  So it could be a typographical error or

12    something else.

13         MS. PEEBLES:  It could be, Judge.  I just don't --

14    it could be.

15         PROBATION OFFICER:  Judge, if I may, that is a

16    typographical error, it should be 2022.

17         THE COURT:  Thank you for correcting that.  So

18    we'll note on page 5 that the 2021 date should be March 1st,

19    2022; does that make more sense to you, Mr. Johnson?

20         THE DEFENDANT:  I object, sir, 'cuz to my

21    understanding it was March 1st, 2021.

22         THE COURT:  What was?

23         THE DEFENDANT:  The failure to appear.

24         THE COURT:  Okay.  But the probation officer has

25    just indicated that she had a typographical error and it

1    should be 2022, because you're right, it doesn't make sense

2    that you failed to appear before you were arrested.

3              THE DEFENDANT:  So I would like a hearing about

4    that because it's basically hearsay at this time.

5              THE COURT:  This whole thing is hearsay.  Okay.

6              THE DEFENDANT:  And that's against the law,

7    hearsay.  Can't be convicted off hearsay, it has to be

8    tangible evidence.

9              THE COURT:  Right, we're not trying to convict you

10   of this offense in Ohio, we're simply trying to go through

11   your criminal history as it pertains to, in this instance,

12   the mental health examination, and more cogently to any

13   motion on detention.

14             THE DEFENDANT:  And I can also have the mental

15   evaluation done through Liberty Resources or Helio Health so

16   I'm not being afforded medical attention at the facilities

17   I'm at, so it will be more productive for me to have outside

18   resources such as outpatient, you know, services so I can

19   receive mental health treatment.

20             THE COURT:  Well, the evaluation isn't necessarily

21   for treatment purposes, evaluation that the government is

22   seeking to determine whether you are competent to stand

23   trial.  That's kind of a different standard from whether you

24   need treatment for some mental health issues like PTSD, for

25   example.

1          THE DEFENDANT:  And I was receiving that treatment

2    at Liberty Resources.  So I'm currently in treatment at

3    Liberty Resources for all of these diagnoses that I received.

4          THE COURT:  Right, but Liberty Resources has not

5    diagnosed you as competent or incompetent to stand trial,

6    correct?

7          THE DEFENDANT:  And they -- and um, I'm currently

8    being reviewed by Family and Children Resources for Onondaga

9    County, I have a date coming up soon to be evaluated so we

10   can merge this matter with that matter.  They're currently

11   scheduling it right now.

12         THE COURT:  So we have several issues pending here.

13   I think the most important one to decide is whether you need

14   to have a competency evaluation, because if you were unable

15   to understand the charges --

16         THE DEFENDANT:  I understand the charges, sir, and

17   I'm currently asking to be released so I can further

18   investigate these matters.  As I was told it was open

19   investigations on the parties involved, by A. Zachary Glaze.

20         THE COURT:  I'm sorry, I didn't understand what you

21   just said.

22         THE DEFENDANT:  Um, FBI Agent A. Zachary Glaze, he

23   had entered 122 Dickerson Street in Syracuse, New York,

24   13202, on August 12th, 2025 and stated that there were open

25   investigations on the victims in this matter.  And basically

1  that's how we opened up conversation, he didn't acknowledge

2  that it was a warrant for my arrest or any of the allegations

3  he states in his complaint.

4        THE COURT:  He probably didn't tell you there was a

5  warrant because there probably wasn't a warrant at the time

6  you and he spoke.

7        THE DEFENDANT:  I was arrested immediately after

8  and it was no probable cause because we were basically

9  discussing the ramifications of the investigations on the

10  parties.

11        THE COURT:  Okay, so you understand that ship has

12  pretty much sailed because we now have an affidavit, we have

13  a judicial determination of probable cause at least for the

14  arrest warrant, and the next issue then is are you competent

15  to understand the nature and consequences of the charges --

16        THE DEFENDANT:  Yes.

17        THE COURT:  -- and are you able to assist your

18  attorney in representing you in this case.

19        THE DEFENDANT:  Yes, I am.

20        THE COURT:  But then we have the issue of what you

21  alleged happened at the jail which is, if it's true,

22  terrible, and if it's false, an indication that you are

23  mentally unstable or mentally unable to appreciate truth and

24  false.  You want me to review that video, and if that video

25  determines that there was nothing that happened, there was no

1    sexual assault, maybe there was harassment, but sexual

2    assault is a far more serious charge than harassment, I'm

3    curious to know what you think I'm going to find.  You were

4    there, I wasn't, you know what was on the video because you

5    were present.  If anything happened outside the camera you

6    still know what happened, I wouldn't.  So how is it going to

7    help me to take a look at the video if I've got you saying

8    they sexually assaulted me, I've got somebody who is accused

9    saying no and somebody who reviewed the video footage saying

10   no.

11            THE DEFENDANT:  I would like the camera footage

12   reviewed, and also I have camera footage from January 2nd,

13   2025 where I was also sexually assaulted and on January 10th,

14   2025, I was exposed to fentanyl after being moved from 5C

15   unit to 4B unit and I was requesting medical attention and I

16   was denied for over nine hours and medical attention was not

17   rendered to me, and I overdosed.  So it's basically a threat

18   to my life if I'm incarcerated, and I won't be able to

19   utilize the law library or any of the tools I have to

20   litigate my case.  So I'll be prohibited from properly

21   legally representing me, myself, and also aiding my attorney

22   with these matters.

23            THE COURT:  So on the issue of representing

24   yourself, you've never been to law school or have never

25   studied law, have you?

1          THE DEFENDANT:  I have 52 hours I believe at Greene

2     Correctional Facility for Shepardizing cases in the law

3     library.

4          THE COURT:  Okay.  What's the process of

5     Shepardizing a case?

6          THE DEFENDANT:  At this time, I would look into the

7     law books and basically cite cases that pertain to my case,

8     and I would add them to my case as footnotes or reasons for

9     motions.

10          THE COURT:  Okay, but the process of Shepardizing,

11     it does what, what's the purpose of that?

12          THE DEFENDANT:  It's updating cases pertaining to

13     your matters.

14          THE COURT:  Okay.  Have you ever represented

15     yourself in a criminal action?

16          THE DEFENDANT:  Yes, I have, I currently have three

17     cases pending, two in city court set for pretrial,

18     October 3rd, that I need to prepare for.  I need camera

19     footage, I need to speak to witnesses, alongside motion

20     filing.  I won't be able to utilize those services

21     incarcerated, and I know that October 3rd is soon to, you

22     know, come up and I won't even have, you know, the legal, you

23     know, ramifications or resources to litigate those open cases

24     for county court as well as city court and it's three cases

25     in total.

1          So by me being incarcerated, it will prohibit me

2     from properly litigating my case, and also I have a Family

3     and Children Services evaluation coming up soon that I need

4     to check on as soon as possible for those matters.  And also

5     I can basically merge this matter for the evaluation so we

6     can have it done through Erie County Family and Children

7     Services or Onondaga County Children and Family Services.

8          THE COURT:  So you understand the charges against

9     you right now, correct?

10         THE DEFENDANT:  Yes, sir.

11         THE COURT:  I'll tell you what, you don't really

12    need to get that close to the microphone because they're

13    popping quite a bit.

14         THE DEFENDANT:  Okay.

15         THE COURT:  All right.  Do you understand if you're

16    found guilty of one or more of these crimes, that the court

17    can order you to be sentenced in accordance with the law and

18    the sentencing -- advisory Sentencing Guidelines?

19         THE DEFENDANT:  Yes, sir.

20         THE COURT:  You understand that if you represent

21    yourself, you are on your own, I cannot advise you, the

22    prosecutor can't advise you, you're going to be on your own?

23         THE DEFENDANT:  Yes, sir, and I also am aware that

24    I'm protected under Rule 5(f) due process act and my due

25    process rights are being violated at this time because I was

1   never served properly with a warrant during my arrest or I

2   wasn't read my rights in a timely manner when I was served

3   the warrant for my arrest.  So I wasn't read my rights,

4   Miranda rights, and I also wasn't given authentic copy of my

5   warrant.

6          THE COURT:  What do you mean authentic copy, what

7   do you mean?

8          THE DEFENDANT:  Authentic copies signed by a judge.

9          THE COURT:  I have one up here in front of me.  You

10   don't have any copy of the warrant?

11          MS. PEEBLES:  He just has a copy, your Honor, of

12   the signed criminal complaint that you acknowledged, that's

13   what he has.

14          THE DEFENDANT:  And technically, that's a violation

15   of my 5(f) rights, and I'm asking for immediate action

16   against the prosecutors because they have failed to process

17   me for my warrant and serve me the warrant in a timely

18   manner.  So I'm asking that the warrant be objected to, and I

19   ask to be reserved for appeals for the warrant not being

20   properly served to me, and/or my Miranda rights being read to

21   me after the warrant was served, because I was arrested

22   before the warrant was served.  And to my understanding of

23   the law, you're supposed to have a warrant served to you and

24   also your Miranda rights read to you before you are arrested

25   or while you are being arrested.

1          THE COURT:  Do you know what a probable cause

2     arrest is?

3          THE DEFENDANT:  Yes, it's reason to arrest someone

4     but it doesn't, you know, justify the due process 5(f) act

5     because I was never served a warrant and you have to have a

6     warrant written by a judge in order to enter a building.  I

7     live at 122 Dickerson Street, so they entered the property

8     without my consent.  I'm still a resident at that property, I

9     have documents to support that.  So they -- they entered the

10    property illegally, and illegally audio record -- recorded me

11    because I never gave consent to any of this actions that were

12    taken by A. Zachary Glaze.

13         THE COURT:  Okay.  When would you want to -- I

14    mean, when in our federal process would you be able to

15    litigate those issues?

16         THE DEFENDANT:  We have to schedule a date for that

17    pending this hearing.

18         THE COURT:  You realize that a complaint is not an

19    instrument upon which you can be taken to trial?

20         THE DEFENDANT:  Yes, sir.

21         THE COURT:  What instruments can be used to take

22    you to trial?

23         THE DEFENDANT:  Discovery.

24         THE COURT:  Are you familiar at all with the

25    Federal Rules of Criminal Procedure?

1            THE DEFENDANT:  Yes, sir.  Yes, sir.

2            THE COURT:  You don't need to get that close to the

3    mic.

4            THE DEFENDANT:  Yes, sir, and I'm familiar with

5    what you stated, what was it, August 14th, 2025, that if the

6    prosecutors didn't present evidence that was convincing to

7    you, that they could be terminated from their jobs, and at

8    this time, it's not enough discovery evidence to present

9    these warrants or charges because it states there's no

10    pending counts.  It's just a complaint, so it's -- in no way

11    can I be held against my own will without your consent.

12            THE COURT:  Okay.  Well, how do I manifest my --

13    how do I indicate that I've consented to you being held?

14            THE DEFENDANT:  Through discovery requests, such as

15    camera footage, A. Zachary Glaze stated that he had audio and

16    camera footage of the matters which would constitute illegal

17    arrest and false arrest because I wasn't technically charged.

18    He just assumed off of his experience that he had probable

19    cause to arrest me and he didn't -- he didn't even have a

20    warrant to enter the premises.

21            THE COURT:  What kind of a premises was that?

22            THE DEFENDANT:  It's a shelter premises but it's

23    also a resident premises for me, I'm a resident there, I been

24    a resident there for over five years, so under property laws

25    and tenant laws, you have to have a warrant to enter a

1    property, and he did not have that at that time.

2         THE COURT:  And when he entered the property, where

3    did you and he encounter each other?

4         THE DEFENDANT:  I was minding my business at a

5    table and he basically removed someone from the table that

6    was sitting with me, illegally, and said that he has open

7    investigations on the parties involved.  He stated that it

8    was a judge from Cayuga County, Onondaga Justice Center --

9    well, Onondaga County judge, and also a Cayuga County judge,

10    and he stated that there were open criminal investigations

11    against these parties and I thought that that was true, I

12    thought that to be true.  And these statements in the

13    criminal complaint, he lied and stated that, I quote from

14    12 -- 13, excuse me, I quote from 13, page 5, "On August 12,

15    Johnson was interviewed by law enforcement at the Rescue

16    Mission on Dickerson Street in Syracuse, New York."  He

17    didn't have a probable cause to enter that residence so I

18    would like to state that, for probable cause, to dismiss this

19    matter.  And I object to him having a warrant to do so.

20    Because I never was served it before he interacted with me.

21    He lied and said that it was open investigations against

22    these parties.  And the interview was audio recorded, I do

23    not recall any type of tape monitor or audio recording being

24    brought out.  And it states I was not in custody so basically

25    if he had probable cause to arrest me or warrant to arrest

1    me, that should have been immediately done and secured the

2    premises, as well as secured the subject.

3              And prior to the interview, he stated that it was

4    open investigations against these parties.  So in no way was

5    I told that I was free in the interview to leave at any time.

6    He basically told me that these parties are involved in biker

7    gangs such as a party named, a sheriff, his name is Toby,

8    Toby Shelley, he said that he was part of a bike club called

9    the Hell's Angels and that they were investigating a matter

10   for that, and he also said the other judges were under

11   investigation for due process violations.

12             So no way I was told to leave at any time, I was

13   under the pretense that I was helping out in investigations

14   against these parties and he didn't have no warrant to speak

15   to me or audio record me because I never consented, it was

16   just, I was caught by surprise because the staff, which

17   stated that I'm permanently barred from my residence that I

18   been at for five years, so that has to go through small

19   claims court in order for me to be legally evicted.  So in no

20   way did they follow the ramifications of the law far as

21   interviewing me or entering the premises.

22             THE COURT:  If your attorney were to tell you, and

23   I don't know if she did and I don't want to know if she did,

24   that it was perfectly legal for the agent to come into the

25   premises, with the permission of the owner of the premises

1    and to talk to you in a common area, not in your private area

2    but in a common area, would you take her advice and

3    understand that you can't fight that part?

4        THE DEFENDANT:  If she said it, I would agree to

5    disagree because I would have to do the research to see

6    what's the ramifications because every case is different.  I

7    was a resident at 122 Dickerson Street for over five years.

8        THE COURT:  Right.

9        THE DEFENDANT:  So even if the owners consented

10   that they could enter the premises, they didn't have a

11   warrant to approach me or pester me.  You have a warrant to

12   approach somebody, especially if you lie to them and say it's

13   an open investigation on the parties you're interviewing them

14   about, and then you lie under oath to a judge stating that

15   the person was free to go and you stated this, and the camera

16   footage will reveal that if they do have it, or the audio

17   footage, and also there were Syracuse police officers on

18   standby so I was a bit intimidated and thrown off by it

19   because of my experiences with Syracuse Police Department.  I

20   been, you know, falsely arrested and accused of crimes that I

21   didn't commit such as a Key Bank menacing charge, they stated

22   that I bust out a window with a table at the Key Bank and it

23   wasn't true, I wasn't even in the vicinity or the city at

24   that time as I can recall.  And I'm going to trial right now

25   for felony charges for that.  And by me being incarcerated,

1    it will limit my investigations and my right to file motions

2    because where I'm housed at, they don't allow me to use the

3    law library, they don't allow me a pen and paper, I have to

4    beg and go through like different channels to get writing

5    paper.

6             I have a document right here stating that I may

7    request to speak to Auburn Police Department and a few other

8    government entities and they haven't requested for me to

9    speak to them people either, so I'm being denied due process

10   rights while being incarcerated.  And I have ongoing legal

11   matters that I need to be outside for.  I'm willing to take

12   an ankle monitor at this time, to be monitored and I'm also

13   willing to actually go, if I am released today, to Family and

14   Children Services and demand that I have a mental health

15   evaluation done as soon as possible.  So if I'm --

16            THE COURT:  The original question I asked you was

17   if your lawyer told you that what the agents did was within

18   the law, would you accept that advice or would you reject it.

19            THE DEFENDANT:  I will have to do my research, sir,

20   on the ramifications.  I would have to go through small

21   claims court to see, you know, if I've been legally evicted

22   or --

23            THE COURT:  We're not talking about the eviction

24   yet, we're talking about just the incident when they arrested

25   you on August 13th.

1          THE DEFENDANT:  I would have to contest it because

2     he lied to me.  He lied and said it was open investigation

3     and here on 13 it says that he stated that I was free to end

4     the interview when he didn't say that.  At all.  At any time

5     during the interview.

6          THE COURT:  Did he tell you that you couldn't

7     leave?

8          THE DEFENDANT:  Um, yeah.  Yes, he did.  He told me

9     that I couldn't leave and that's when he arrested me.

10          THE COURT:  Oh, he told you that right before he

11     arrested you?

12          THE DEFENDANT:  Yep, but all the time during the

13     interview, he was saying that it was open investigations

14     against these parties.

15          THE COURT:  Okay.  Mr. Brown.

16          MR. BROWN:  Yeah, your Honor, if the court is so

17     inclined, it can also take judicial notice of the pretrial

18     services report which further reflects the defendant's kind

19     of paranoid, delusionally confused thinking.  When he's

20     interviewed about his employment history, he tells probation

21     that he's employed by Carrols Corp as a restaurant auditor,

22     IRS auditor, and whistleblower, self-employed at that

23     business for over 10 years, but noting he hadn't been

24     compensated for his work.  That seems to be confused at best.

25     With regard to his --

1           THE DEFENDANT:  I object.

2           THE COURT:  Just a moment, let him finish.

3           MR. BROWN:  With regard to his mental health, he

4    says he's suffering from PTSD from multiple sexual assaults

5    while in custody, including during his current incarceration,

6    as well as physical assaults from law enforcement.  He claims

7    that he has been inpatient in 2022 but said that when he was

8    put in inpatient, it was based on being picked up by police

9    and having records falsified by the police, that's why he was

10   taken to inpatient treatment.

11          With respect to substance abuse, the defendant

12   states he's never tried alcohol or any illicit substances but

13   then also states that he's had prior substance abuse

14   treatment at Liberty Resources and Vera House, and as your

15   Honor pointed out, was actually arrested for driving under

16   the influence, but also appears to be confused thinking at

17   best.

18          And with respect to any of his arrests, he says he

19   was wrongfully imprisoned and the crimes were covered up,

20   which I think your Honor was covering earlier with respect to

21   his previous criminal history.

22          THE DEFENDANT:  I object, and I reserve my rights

23   to appeal as this has nothing to do with my current situation

24   under 5(f), due process protective act.  I'm entitled to be

25   protected while under custody, and under Rule -- Federal Rule

1      Civil Procedure 5(f), I am entitled to be released if my

2      matter is not violent, nonviolent, which it satisfies that

3      this is a nonviolent matter and that I'm currently in pursuit

4      of receiving mental health evaluation by Onondaga County

5      Sheriff's -- well, Onondaga County Family and Children

6      Services.

7               So at this time, I object to his allegation that

8      I'm not competent, I'm well competent and I have college

9      history at Bryant & Stratton for over two years for business

10     administration.  So I would like to acknowledge that I do

11     have college experience and also I'm seeking to be released

12     on my own recognizance at this time, as all the allegations

13     are false against me, and until proven by discovery, I am

14     innocent, so I am entitled under Reform Act to be released

15     because I pose no threat to society.

16              I was working at Chipotle, I was assaulted and I in

17     no way did react in a violent manner to my assault.  So I

18     would like to state that I am not a violent person, I am no

19     threat to society or my community, and also I'm seeking

20     counseling, active counseling and being incarcerated will

21     affect my counseling at this time for the experiences I

22     endured, and I'm entitled to be released under reform.

23              THE COURT:  I find it curious on page 2 of the

24     pretrial services report, about the middle of the page it

25     says, "The defendant does not report having any children.

1    According to the defendant's mother, Johnson has one

2    daughter, Robin Johnson, age 7.  She does not know where

3    Robin lives nor who her mother is."

4            THE DEFENDANT:  Again, that has nothing to do with

5    this matter, that's more of a Family Court issue instead of a

6    criminal issue, so I object to that at this time.

7            THE COURT:  Okay.

8            THE DEFENDANT:  Reserve my rights for appeal.

9            THE COURT:  Well, you are certainly correct that

10   you cannot be found guilty until there is legal and competent

11   evidence entered in a case against you in accordance with the

12   Rules of Evidence and the Rules of Criminal Procedure which

13   you have a slight understanding of but not a thorough

14   understanding of.  It appears to me that there is reason to

15   believe that you'll be unable to understand the nature and

16   consequences of the proceedings against you or assist

17   properly in your defense, due to a mental disease or defect.

18   But of course I don't have any professional competence in

19   that area, so I need to get a professional opinion on that

20   issue.  And that's what I'd like to do is get a professional

21   opinion on that issue.

22           THE DEFENDANT:  I currently have a open case for

23   evaluation, as I stated, with Onondaga Family and Children

24   Services and you can confirm that through via phone if you

25   like to confirm, and I would like it done through Onondaga

1    County Family and Children Services being that I have ongoing

2    city and county matters pending and this could be alongside

3    those city and county litigations, and I have trials set for

4    October 3rd, 2025, and being incarcerated will disable me

5    from representing myself properly for these matters.  So at

6    this time I'm asking to be released on my own recognizance

7    and I object to all allegations that I am incompetent.  My

8    city and county matters have been ongoing since September 6,

9    2024, and I'm close to trial and I need to utilize the law

10    library which I'm not being able to utilize while

11    incarcerated, alongside medical attention, my HIPAA rights

12    are being violated by Cayuga County.  I'm currently in Cayuga

13    County custody but I'm under a U.S. Marshal detainer so I'm

14    asking that I be removed from Cayuga County jail and be

15    released on my own recognizance because at this time it's a

16    conflict of interest, being that I'm being held at a county

17    jail and I'm under a U.S. Marshal detainer.  And also reserve

18    my rights for the transportation issues I'm having.  I'm

19    under a U.S. Marshal detainer but I'm being transported by

20    Cayuga County Sheriff and I'm supposed to be under U.S.

21    Marshal detainer which means that I am supposed to be

22    transported by U.S. Marshals under my understanding of the

23    law.

24            THE COURT:  Okay.  So Ms. Peebles, I'm sorry, but I

25    am going to order an examination based on what we've

1    discussed here on the record today, and the allegations and

2    argument by the prosecutor in this case.  I am concerned

3    about his ability to assist any defense counsel, let alone

4    represent himself in the event that this case moves forward

5    after an examination.  Mr. Brown, is it possible that you

6    could provide me with a draft order --

7            MR. BROWN:  Yes, your Honor.

8            THE COURT:  -- and provide a copy to counsel?

9            THE DEFENDANT:  I object to that draft order, sir.

10            THE COURT:  I understand.  Perhaps before I leave

11    today I can sign the order and put things into process so we

12    can move them along as quickly as possible.

13            THE DEFENDANT:  And at this time I'm asking to be

14    released on my own recognizance as I have city and county

15    trials pending and I need, you know, the right to use the law

16    library which I'm not being able to use being that I'm

17    currently confined 23 hours out of the day for no initial PIM

18    counts.

19            THE COURT:  Ms. Peebles, in light of his concern

20    about the other pending cases, is it possible you can

21    communicate with the authorities in those jurisdictions to

22    let them know what's happening here?

23            MS. PEEBLES:  Yes, Judge, I will.  I've been

24    speaking with his standby counsel so I will reach out to him

25    and he can notify the court to let them know where we are

1    with this case and perhaps I can provide a timeframe once I

2    have a better handle on when the evaluation will take place.

3              THE COURT:  Yes, understood, thank you.

4              THE DEFENDANT:  At this time, sir, I'd like to

5    speak on my own behalf.  I'm not a threat to the community or

6    society so I'm asking to be released on an ankle monitor and

7    I will attend the mental health evaluation outside of the

8    county jail.  It is possible that I can speak with Onondaga

9    County Family and Children Services about this without being

10   incarcerated and further traumatized.

11             THE COURT:  I understand, I appreciate your offer,

12   but under the statute that the government has made its motion

13   under, I'm required to have you examined, specifically for

14   competency issues, not just mental health treatment.

15             THE DEFENDANT:  And that could be done outside of

16   the jurisdiction of Cayuga County where I'm not technically

17   supposed to be detained because this is a federal matter.

18             MS. PEEBLES:  They're not going to take -- if I

19   may, Judge, for a moment.

20             THE COURT:  Sure, go right ahead.

21                  (A discussion was held off the record between

22                   the defendant and Ms. Peebles.)

23             THE DEFENDANT:  All right, sir, at this time I'm

24   reserving my rights to appeal, and I would like to forward

25   these records to you before the closing.

1          THE COURT:  Sure, just show them to your attorney

2    first to make sure there's nothing in there that's going to

3    be harmful to you.

4          THE DEFENDANT:  I would like them -- can you have

5    made copies of them, of these ones?  At this time, sir, I

6    reserve my rights to appeal this action and I reserve my

7    rights for civil liabilities and sanctions if founded that I

8    am competent to represent myself, and I have the appeal

9    records right here, sir.

10          THE COURT:  Understood.

11          MS. PEEBLES:  Whatever he would like to submit to

12    the court, I will collect from him and then --

13          THE DEFENDANT:  I would like a copy so I would like

14    to personally submit them to you after a copy is made.

15          COURTROOM DEPUTY:  Lisa, we can get together after

16    and make copies.

17          MS. PEEBLES:  Thank you.

18          THE COURT:  So until the competency determination

19    is made after a hearing following the evaluation, I don't

20    think we should go forward on detention or on self

21    representation at this point.

22          MS. PEEBLES:  That sounds correct, your Honor.

23          THE DEFENDANT:  I reserve my rights for appeals and

24    immediate release upon discovery that I am capable of

25    representing myself as I stated.

1          THE COURT:  So Mr. Johnson, you have very

2     effectively preserved the record, and I'm sure that the

3     appellate court will appreciate that you've done so on

4     numerous occasions, that you have made objections, that you

5     have asked that your rights be preserved, and certainly they

6     are.  So until such time as I have a determination from a

7     professional concerning my issue with your competency, we

8     won't go forward on the detention issue and we won't go

9     forward on the self-representation issue.  But if the

10     competency evaluation comes back that you are competent to

11     stand trial, the next step then would be to talk about

12     whether you can represent yourself.  There are instances in

13     which people have been found competent to stand trial but not

14     competent to represent themselves.  I have some case law on

15     that.  But that's a bridge we need to cross once we're done

16     with this competency evaluation first.  I know the law

17     moves -- tends to move slowly but they want to be thorough.

18          THE DEFENDANT:  I would like to be released on my

19     own recognizance with an ankle monitor, sir, or -- because I

20     haven't been found convicted of these charges so at this time

21     I'm being prohibited to do legal research on my own and being

22     incarcerated will limit that time that I have to do legal

23     research.  So at this time I reserve my rights for sanctions

24     because it's false information being presented to illegally

25     detain me and I reserve my rights for appeals and

JODI L. HIBBARD, RMR, CRR, CSR
(315) 234-8547

1    exhaustions.

2            THE COURT:  Okay.  Under Section 4241(d), it

3    states, "If, after the hearing, the court finds by a

4    preponderance of the evidence that the defendant is presently

5    suffering from a mental disease or defect rendering him

6    mentally incompetent to the extent that he is unable to

7    understand the nature and consequences of the proceedings

8    against him or to assist properly in his defense, the court

9    shall commit the defendant to the custody of the Attorney

10   General.  The Attorney General shall hospitalize the

11   defendant for treatment in a suitable facility for such a

12   reasonable period, not to exceed four months, as is necessary

13   to determine whether there is a substantial probability that

14   in the foreseeable future he will attain the capacity to

15   permit the proceedings to move forward."  So --

16           THE DEFENDANT:  I object.

17           THE COURT:  -- we're not at that point yet, that's

18   what's going to happen after the competency evaluation comes

19   back.

20           THE DEFENDANT:  I object, I object to the, um, to

21   all allegations.  This is just a mechanism to keep me

22   incarcerated and basically to limit my resources to defend

23   myself, so at this time, I reserve my rights to be

24   immediately released upon discovery and investigations that

25   my 5(f) due process protective act rights have been violated.

1    So if it's founded that my 5(f) protective -- well, due

2    process protective act rights have been violated, I request

3    sanctions as stated in the motions, and I reserve my rights

4    for appeals against --

5              THE COURT:  You're referring to your *Brady* rights

6    and certainly they are preserved and I've already warned the

7    prosecutor of the consequences if the prosecutor's office

8    violates the *Brady* rule.

9              With regard to an examination, I have also asked

10   both counsel and the probation office if there was a facility

11   locally that could do that and none of them reported that

12   there was, so --

13             THE DEFENDANT:  And I --

14             THE COURT:  -- I admit you to the Attorney

15   General's custody to put you in custody for the initial

16   examination.  After that examination, I'll get a report.

17   That report will then tell me, yes, we think he's competent

18   to stand trial, or no, we don't think he is.  Then we're

19   going to have a hearing about whether that report is accurate

20   and whether indeed you should be hospitalized for any

21   treatment if that's what's called for.  But the first thing

22   to get is that report from a professional.

23             THE DEFENDANT:  And will I be released if I'm found

24   that I am competent?  I'm requesting immediate release if I'm

25   found competent.

1          THE COURT:  If you're found competent, then we will

2     do the detention hearing right then and there.

3          THE DEFENDANT:  All right.  And could I have that

4     arranged for today because Onondaga County Family and

5     Children's Services can do that and we can do it via

6     telephone.

7          THE COURT:  I don't know that Onondaga County

8     Family Services is something that the Attorney General can

9     use --

10          THE DEFENDANT:  Yes, they can.

11          THE COURT:  -- for this particular determination.

12     Mr. Brown, you probably know more about that than I.

13          MR. BROWN:  It's my understanding that that type of

14     evaluation would not meet the requirements that are required

15     by the statute and therefore would be inappropriate in this

16     matter.

17          THE DEFENDANT:  I object, it's supposed to be made

18     available facilities for this evaluation because this is a

19     federal facility and it should be -- it's plenty places that

20     I can go for evaluation.  So I'm asking that it be done at a

21     hospital, St. Joseph Hospital at the least.

22          THE COURT:  I'm going to charge the prosecutor with

23     the duty of finding an appropriate facility by use of the

24     Marshal Service most likely to make sure that there's a bed

25     available for you for evaluation and that the psychiatrists

1    there can do the evaluation required by the statute.

2              THE DEFENDANT:  And will that be done through St.

3    Joseph or Upstate because they have open availability for --

4              THE COURT:  I don't think that those are federal

5    facilities at which they do those investigations.  I believe

6    it will be a different facility.

7              THE DEFENDANT:  Okay.  At this time I'm asking to

8    be released because the burden is on the USA and not me.

9    They're alleging that I have mental health issues, but under

10   5(f), I'm protected under due process until found that I am,

11   you know, what they allege, I'm entitled to be released under

12   Bail Reform Act.  So I'm asking that my Bail Reform Act be

13   reviewed at this time during this proceeding under 5(f)

14   because I'm entitled to be released whether through my own

15   recognizance or I'm willing to accept an ankle monitor,

16   because I have ongoing matters, like I stated, that I could

17   face state time for and also city, county jail time for.  So

18   being that I'm waiting to be reviewed by alleged accusations

19   that I have mental deterioration or mental incompetency,

20   that's prohibiting me from arguing my cases that are ongoing.

21                   (A discussion was held off the record between

22                     the defendant and Ms. Peebles.)

23              THE DEFENDANT:  At this time, sir, I object to this

24   entire proceeding as I have not been formally charged or

25   given a warrant for this matter and I reserve my rights for

1    appeals and requesting that the Second Circuit review this

2    court docket 5:25-MJ-236-MWP and I presently gave a Notice of

3    Appeals and sanctions to my attorney to be filed with the

4    Second Circuit Court of Appeals.  So I'm asking that you

5    receive a copy and also the Second Circuit Court of Appeals

6    located in 40 Foley Square, New York, New York, zip code

7    10005.  So I'm asking that these records be forwarded to the

8    Second Circuit Court of Appeals for review and I need a copy,

9    a master copy myself of all the records that I have forwarded

10   to my attorney.

11          THE COURT:  Thank you.  Counsel, it's my

12   understanding that any appeal from my decision today would go

13   to the District Judge assigned to this case, not necessarily

14   straight to the Second Circuit.

15          THE DEFENDANT:  I'm requesting --

16          MS. PEEBLES:  That is correct, Judge, it would have

17   to go to the District Court Judge procedurally before it went

18   up to the Second Circuit.

19          THE DEFENDANT:  I object, because I'm not formally

20   charged because I haven't been issued a warrant so I'm asking

21   that it go to the Second Circuit court and I'm demanding

22   that -- I'm demanding that a copy of this be forwarded to the

23   Second Circuit Court of Appeals.  I'm demanding.  Under my

24   rights, I have a right to appeal this to the Second Circuit.

25          THE COURT:  You can send whatever you want to to

1    the Second Circuit, that's fine.

2                    (A discussion was held off the record between

3                        the defendant and Ms. Peebles.)

4            THE COURT:  All right.  So Mr. Brown is going to

5    prepare and draft an order and can settle it with

6    Ms. Peebles.  If that's possible to do before I depart

7    Syracuse, that's great.  If not, I'll accept it

8    electronically, take input from both sides.

9            THE DEFENDANT:  And I'm at this time asking that

10   you recuse yourself from this, as you are not in the

11   jurisdiction of Northern District New York and you are acting

12   biased.  This is a 5(f) hearing, due process protective act

13   and not a litigation where a prosecutor can just assume that

14   I have mental issues without any supporting evidence.  So I'm

15   asking that you be barred from litigating these matters and I

16   reserve my rights for sanctions against you.  And it's

17   starting today, August 19th, 2025, and I'm sanctioning daily

18   me being held here, $1 billion for me being illegally

19   confined here, $1 billion every day for my wrongful

20   imprisonment, and I'm filing a civil lawsuit against you, and

21   I will state that for the record.  And also this matter is a

22   civil liabilities matter.

23           THE COURT:  Mr. Johnson, I'm denying your motion

24   for recusal at this time.  You of course --

25           THE DEFENDANT:  I object.

1        THE COURT:  Excuse me.  You have a right to appeal

2   my decisions in this case to the assigned District Judge and

3   if you are dissatisfied with the District Judge's decision,

4   there may be a way to appeal also to the Second Circuit.

5                (A discussion was held off the record between

6                the defendant and Ms. Peebles.)

7        THE DEFENDANT:  And I'm asking to be immediately

8   moved to the facility where I'm supposed to be evaluated as

9   this is a delay in all of my proceedings and mechanism to

10  stymie investigations against A. Zachary Glaze alongside

11  Onondaga County Sheriff Department and I reserve my rights

12  for civil sanctions against all parties involved.

13       THE COURT:  I will certainly ask that any

14  evaluation be expedited to assure that you get evaluated as

15  quickly as possible so they don't have to keep you

16  incarcerated for any longer than necessary.

17       THE DEFENDANT:  And I'm reserving my rights for

18  civil liabilities as I have not been convicted and I'm being

19  held against my own will.

20       THE COURT:  Okay.

21       THE DEFENDANT:  And I reserve rights to sanction

22  Attorney, U.S. Attorney Brown as well.

23       THE COURT:  Your rights are very well reserved, as

24  the court reporter will tell you, all over the record, you've

25  reserved your rights very, very well.  So I don't think that

JODI L. HIBBARD, RMR, CRR, CSR
(315) 234-8547

1    will be a problem on any appeal from anything that went on

2    here today.

3              Is there anything further, Mr. Brown, before we

4    adjourn?

5              MR. BROWN:  No, your Honor, I believe the order

6    will probably mention the impact on the preliminary hearing

7    and whatnot.

8              THE COURT:  On?

9              MR. BROWN:  With respect to the timing of

10   preliminary hearings and other --

11             THE COURT:  Yes.

12             THE DEFENDANT:  I object.

13             THE COURT:  What we should do is adjourn those

14   hearings until a certain amount of time following --

15             THE DEFENDANT:  I object, I give you 24 hours to

16   have this evaluation done as this is a federal facility and I

17   object and I reserve my rights for sanctions at $1 billion a

18   day.

19             THE COURT:  Thank you, Mr. Johnson.

20             THE DEFENDANT:  Because I'm being illegally

21   detained and I reserve my rights for appeal.

22             THE COURT:  You are absolutely reserved, no problem

23   there.  Yes, I think we should address that as well.  My

24   suggestion is that we hold the preliminary hearing within so

25   many weeks of the report.  If the report comes back, however,

1    and says incompetent, then we need to make that determination

2    first.  So I guess it would be within so many weeks of the

3    determination under the statute after the report comes back

4    and we have a hearing on that report.

5              MS. PEEBLES:  Yes, Judge.

6              MR. BROWN:  Thank you, your Honor.

7              MS. PEEBLES:  And the only other thing I would just

8    ask is if the courtroom deputy could make a copy of this for

9    my client, I'll give him back the originals, he would like

10   copies filed with the court.

11             THE COURT:  Where is he going to be immediately

12   after we adjourn?

13             THE DEFENDANT:  For the record --

14             THE COURT:  Just a moment, Mr. Johnson.

15             DEPUTY MARSHAL:  Your Honor, he'll be with us until

16   approximately 4:00.

17             THE COURT:  All right, there's plenty of time then.

18   She's going to make some copies here in the building and then

19   we'll bring the originals back to you.

20             THE DEFENDANT:  No, I want the originals filed with

21   the Second Circuit for the record and I reserve my rights for

22   appeals and the copies can be forwarded to the District

23   Court.

24             MS. PEEBLES:  Do you want a copy?

25             THE DEFENDANT:  Yeah, I want a copy but I also want

1      the originals filed with the Second Circuit.

2              THE COURT:  That looks like a pretty thick sheaf of

3      papers, is that all he wants copied?

4              THE DEFENDANT:  I would like it electronically

5      filed so it can be immediately filed for the record.  I have

6      a right to have it filed with PACER being that my attorney

7      has a PACER account.

8              THE COURT:  The paper towel is not included?

9              MS. PEEBLES:  No, Judge.

10             THE DEFENDANT:  Yeah, it's part of my

11     identification number, so yeah, I want this included.

12             THE COURT:  The paper towel is included.  All

13     right.

14             THE DEFENDANT:  No, you can put it in the middle.

15             THE COURT:  Probably one of the few times they

16     receive records with a paper towel.

17             THE DEFENDANT:  Oh, no, I'm sure they have indigent

18     prisoners that filed with toilet paper before.

19             THE COURT:  Yes, actually I've seen that happen.

20     All right, thanks.  If there's nothing further, we are

21     adjourned without date.

22             MS. PEEBLES:  No, your Honor, thank you, thank you.

23                 (Court Adjourned, 10:41 a.m.)

24

25

```
 1                  CERTIFICATE OF OFFICIAL REPORTER

 2

 3

 4        I, JODI L. HIBBARD, RMR, CRR, CSR, Federal

 5   Official Realtime Court Reporter, in and for the

 6   United States District Court for the Northern

 7   District of New York, DO HEREBY CERTIFY that

 8   pursuant to Section 753, Title 28, United States

 9   Code, that the foregoing is a true and correct

10   transcript of the stenographically reported

11   proceedings held in the above-entitled matter and

12   that the transcript page format is in conformance

13   with the regulations of the Judicial Conference of

14   the United States.

15

16                    Dated this 29th day of September, 2025.

17

18

19                    /S/ JODI L. HIBBARD
                      _____
20                    JODI L. HIBBARD, RMR, CRR, CSR
                      Official U.S. Court Reporter
21

22

23

24

25
```